Bernal v. Hovious.

---

## BERNAL v. HOVIOUS et al.

*Bours* v. *Webster*, (6 Cal. 661) that growing crops are not goods and chattels within the fifteenth section of the Statute of Frauds ; and that—not being susceptible of manual delivery, until harvested and reduced to actual possession—they pass by deed or conveyance from the necessity of the case, affirmed.

*Vischer* v. *Webster*, (13 Cal. 58.) that where two parties are living on a ranch, and one sells his interest in the growing crops to the other, the fact that both parties continue to live on the ranch, and that the vendee works for the vendor as a hired man, does not make the sale void as against creditors, affirmed ; and the principle applied to this case.

Where V., an owner of land, makes a verbal agreement with B.—which they term a lease—by which B. is to have the land for three years ; V. to furnish the farming implements, wagons, horses and his share of sacks ; B. took all the land, and give V. for the use of it one-third of the grain raised, after it is put

in sacks, free from the expense of threshing : *Held,* that this agreement is not a lease, but a contract for working the farm upon shares ; and that the parties are tenants in common of the grain, until a division be made.

*Held, further,* that a Sheriff having an attachment against V. may levy on his interest in the grain ; and to effect this, may take and detain possession of the entire quantity of grain ; but he can sell under the execution on the judgment that may be recovered in the action only the undivided one-third interest of V.—the purchaser at the sale becoming tenant in common with B.

APPEAL from the Twelfth District.

The facts are sufficiently stated in the opinion of the Court. Defendants appeal.

○ *Parker & Waterman,* for Appellants.

I.   The sale from Nicholas Bernal to the plaintiff was void as against the creditors of the former, under the fifteenth section of the Statute of Frauds.   Nicholas continued to live on the premises, and the plaintiff resided in his family, as he had done previously. There was no visible change of possession ; and nothing was done to notify third parties of any transfer of interest ; and after the sale Nicholas frequently worked on the farm for the plaintiff.

The authorities cited by the respondent from New York have been questioned or overruled ; and the cases in the reports of this State are not in point.   In *Vischer* v. *Webster,* (13 Cal. 58) the landlord had not been in possession, and he sold to his tenant who was in possession.   In *Pacheco* v. *Hunsacker* (14 Cal. 120) the tenant sold his interest and abandoned the premises—a most significant act to notify the world of the change of possession.

II.   But admitting the sale to have been valid, the plaintiff thereby became a tenant in common of the grain when harvested with Vasques the landlord.   (*Putnam* v. *Wise,* 1 Hill, 235 ; *Harrower* v. *Heath,* 19 Barb. 331 ; *Dinehart* v. *Wilson,* 15 Id. 595 ; *Moulton* v. *Robinson,* 7 Foster, [N. H.] 550.)

III.   The attachment being against the property of Vasques the landlord, as well as of Nicholas Bernal, authorized the Sheriff to seize and take the grain into possession for the purpose of subjecting it to sale as to the one-third interest of the landlord. (*Waldman* v. *Broder et al.,* 10 Cal. 378.)

*Gough & Wise*, for Respondent.

I.   A sale of a growing crop—the vendee taking charge of the harvesting, &c., of the crop, but the vendor, after the sale and up to the finishing of the harvest, living on the premises where the crop grew and was harvested—is sufficient to so pass the interest of the vendor to the vendee in the crop as to protect the same from the creditors of the vendor attaching the same after it is severed from the freehold.   (*Bours* v. *Webster*, 6 Cal. 661 ; *Vischer* v. *Webster*, 13 Id. 58 ; *Pacheco* v. *Hunsacker*, 14 Id. 120.)   These authorities decide this case.   If the vendor did not abandon the premises after the sale, he lost all control over the crop ; and this is the same thing in effect.

II.   The sale to respondent being sufficient to protect the interest purchased by him from forced seizure and sale as the property of his vendor, the Sheriff was not justified in seizing the whole of the grain in order to sell the interest therein of the landlord. (*Kelley* v. *Weston*, 20 Me. 232 ; 4 Kent, 96 ; *Jackson ex dem. Colden* v. *Brownsell*, 1 Johns, 265 ; *Overseers of Fort Ann* v. *Overseers of the Poor of Kingsbury*, 14 Id. 364 ; *Steuart* v. *Dougherty*, 9 Id. 107 ; *Woodruff* v. *Adams*, 5 Blackf. 315 ; *Brainard* v. *Burton*, 5 Vt. 97 ; *Rhinehardt* v. *Olivine*, 5 Watts & Serg. 157.)

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

This is an action for the possession of five hundred and twenty sacks of oats, ninety-three sacks of wheat and two hundred sacks of barley, alleged to be the property of the plaintiff, and to have been unlawfully taken and detained by the defendants ; and arises upon the following facts: Some time in 1857, one José Maria Vasques entered into a verbal agreement with one Nicholas Bernal in relation to the use and cultivation of a farm situated in San Mateo county.   The agreement is called by the parties a lease. The substance of Vasques' testimony with reference to it is, that he leased the premises to Bernal for three years ; that the lease was not in writing, but that by its terms he was to furnish the seed, the

farming tools and implements, and the wagons and horses, and also the sacks for his share of the grain ; and Bernal was to do the work upon the farm, and give him for the use of the land one-third of the grain raised, free from the expenses of threshing—his share to be taken after the grain was put in sacks. Under this agreement Nicholas Bernal entered upon the premises, and in May, 1860, sold and by deed conveyed his interest in the crops of wheat, oats and barley to his brother, John Bernal, the plaintiff in the present action, for the consideration of five hundred dollars. Subsequent to the sale, Nicholas continued to reside upon the premises with his family, as he had done previously, and the plaintiff resided with him. Nicholas, it would seem, on one or two occasions assisted the plaintiff upon the farm, though the latter took the entire charge and control of the work done, and hired the men employed in harvesting and threshing the grain.

After the grain had been put up in sacks, but before any division between the plaintiff and Vasques, and whilst it was yet in the field, an attachment was issued against the property of Vasques and Nicholas Bernal, and placed in the hands of the Sheriff of San Mateo county, and under it his deputy seized and removed the property in controversy. The defendants are the Sheriff and the Deputy Sheriff, and the present action is for the recovery of the property thus taken. They justify under the attachment. The plaintiff obtained judgment, and hence the present appeal.

There are two questions presented for consideration ; the first of which relates to the validity of the sale from Nicholas Bernal to the plaintiff ; and the second to the nature of the interest possessed by the plaintiff in the grain in controversy.

1. The sale is contested on the ground that the attendant circumstances bring it within the provisions of the fifteenth section of the Statute of Frauds, which declares that, " Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor, or the creditors of the person making

such assignment, or subsequent purchasers in good faith." This position is met and answered by the decisions of this Court in *Bours* v. *Webster* (6 Cal. 661) and in *Vischer* v. *Webster* (13 Cal. 58). In the first of these cases the Court held that growing crops are not goods and chattels within the meaning of the section quoted, and that they will pass by deed or conveyance from the necessity of the case, as they are not susceptible of manual delivery until harvested and reduced to actual possession. In the second case, the tenant purchased the interest of his landlord in a growing crop, and the landlord subsequently resided on the premises, and worked for the tenant as a hired man. The grain, after it was harvested and placed in store, was attached as the property of the landlord. The Court held that the mere fact that the landlord was on the premises, or in the occupancy of the house thereon, showed no such possession in him as would overcome the clear effect of the deeds showing that he had no right as against the tenant. Following these cases, we are of the opinion that the sale in the case at bar was not vitiated by the fact that the vendor continued to reside upon the farm; and his connection with the crops subsequent to the sale was too slight to justify any inference of a reserved or concealed interest in the property.

2. The agreement for the use of the farm, though designated by the parties as a lease, is not one in our judgment. It is a contract for the working of the farm upon shares—Vasques of the one part agreeing to furnish the farming implements, the wagons, the horses, and the seed; and Nicholas Bernal, on the other part, agreeing to work the farm, and to give to Vasques one-third the grain after it is put in sacks; and, until a division was made between them, the parties were tenants in common of the grain. The agreement is not materially different from the one in the case of *Caswell* v. *Districh* (15 Wend. 379). There it was to let the defendant have the farm for one year, he to sow different kinds of grain and to give the testator a portion of the crops raised; and the Court held that the agreement was a letting of the premises upon shares, and that the parties were tenants in common of the crops. The case of *Putnam* v. *Wise* (1 Hill, 235) is a much stronger case than the one at bar, and is conclusive of the point that Vasques and the plaintiff were

tenants in common of the grain to be divided.   In that case, the agreement was under seal, and contained the phraseology of a lease reserving rent.   Its language was that the parties of the first part " do by these presents lease, and to farm let " the premises, and that the parties of the second part covenant, in consideration of the use of the land, to " yield, pay and give one-half of all the grain raised by them " on the farm ; and the Court said :   " It is a case in which we ought not to tie ourselves up to the consideration of mere words.   The substance should be looked at; and that, as it would be universally understood among farmers, is an agreement between owners and occupants, that the latter should come in rather as servants than tenants ; each party taking an interest as common owners in the crops, and other products, as they accrue, by way of compensation to the owners for the use of their farm, and the occupiers for their labor.   (Vid. *Maverick* v. *Lewis*, 3 McCord, 211.)   The extent of such compensation or interest is to be collected from the contract.   (Vid. *Beaumont* v. *Crane*, 14 Mass. R. 400.)   This may be so framed as to secure an exclusive interest to the owner in certain products, such as the hay to be consumed on the farm ; also, an exclusive interest in the young animals to be fed there, till they come to be distributed.   No doubt any provision of this kind may be made, if not in fraud of the occupant's creditors.   (*Lewis* v. *Lyman*, 22 Pick. 437.)   But there being no such provision, a common ownership results in all products to be divided, in whatever form the provision may be for rendering or securing such products to either party.   The true test seems to lie in the question whether there be any provision, in whatever form, for dividing the specific products of the premises.   If there be, a tenancy in common arises, at least in such products as are to be divided."   To the same effect is the case of *Dinehart* v. *Wilson*.   (15 Barbour, 595.)   There the agreement was in the form of a lease, the tenant to deliver to the lessor a certain portion of each crop ; and it was also held, the Court resting its decision upon the case of *Putnam* v. *Wise*, that until a division was made, the parties were tenants in common of the crops.   (See, also, *Harrower* v. *Heath et al.*, 19 Barb. 331.)

These authorities are conclusive upon the second question pre-

Smith v. Judge of the Twelfth District.

sented by the defendants.   Vasques and the plaintiff were tenant in common of the grain, and in attaching the interest of one of them the Sheriff was justified in taking and detaining possession of the entire quantity, though he will not be authorized to sell under the execution on the judgment which may be recovered in that action, anything but the undivided one-third interest of Vasques. The purchaser at the sale, and the plaintiff, will then be tenants in common of the property.   (*Waldman* v. *Broder et al.*, 10 Cal. 378.)

Judgment reversed and cause remanded for a new trial.